UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
ANAQUA, INC.,                       )
                                    )
       Plaintiff,                   )
                                    )
       v.                           )      Civil Action No. 12-10710-FDS
                                    )
RALPH SCHROEDER, CARLA JOHNSON      )
CALLIS, HYPERION RESEARCH, AND      )
HYPERION GLOBAL PARTNERS, INC.      )
                                    )
       Defendants.                  )
_____)

**ORDER ON PLAINTIFF'S EMERGENCY MOTION TO COMPEL AND
DEFENDANTS' MOTION FOR ENTRY OF PROTECTIVE ORDER**
[Docket Nos. 10, 12]

September 14, 2012

Boal, M.J.

Plaintiff Anaqua, Inc. ("Anaqua") has filed an emergency motion to compel and Defendants Ralph Schroeder, Carla Johnson Callis, and Hyperion Global Partners, LLC[1] ("Hyperion") have filed a motion for entry of protective order.[2]  For the reasons contained herein, the motions are granted in part and denied in part.

---

[1] Defendants represent that although Hyperion Research and Hyperion Global Partners, Inc. are named separately in the case caption, Hyperion Research is only a division of Hyperion Global Partners, Inc.  Docket No. 15, p. 1 n. 1.  For the purposes of this motion, the Court will refer herein to Hyperion Research and Hyperon Global Partners, Inc. collectively as Hyperion.

[2] On July 2, 2012, the District Court referred the matter to this Court for full pretrial and dispositive motions.

I.      Factual And Procedural Background

On March 1, 2012, Anaqua filed an Amended Complaint in Massachusetts Superior Court against the Defendants for breach of contract (Counts I, II, V and VII), libel/false statements/defamation (Count III), tortious interference with prospective contractual relations (Count IV), tortious interference with contractual relations (Count VI), and unfair business practices in violation of Mass. Gen. Laws c. 93A (Count VIII).  Docket No. 7 at 31.  Anaqua alleges that Schroeder and Hyperion violated their non-disclosure agreements with Anaqua by publishing Anaqua's confidential information, that Hyperion violated its non-solicitation agreement with Anaqua by recruiting Callis, an Anaqua employee, and that Callis breached non-competition and non-disclosure clauses in her employment agreement with Anaqua by working for Hyperion.

On March 20, 2012, Anaqua filed a motion for expedited discovery seeking, inter alia, to take the depositions of Schroeder, Callis and Hyperion.  Docket No. 7 at 61.  On April 20, 2012, Anaqua and Defendants entered into a stipulation, which the state court entered on April 23, 2012.  Docket No. 7 at 99-102.  Pursuant to the stipulation, Defendants agreed that Schroeder would appear for a deposition on May 16, 2012 as both an individual and as Hyperion's Rule 30(b)(6) witness, and that Callis would appear for a deposition on May 17, 2012.  Id.[3]  On April

---

[3] Hyperion also agreed that, for a period of sixty (60) days commencing on the date of the execution of the stipulation, it would refrain from recruiting or soliciting Anaqua employees, conducting any implementation work employing Anaqua's methodology or tools, and using any of Anaqua's confidential information. (Stipulation and Order ¶ 4(a)-(c)).  Callis also agreed not to "solicit any Anaqua employees for purposes of employment with Defendants and/or obtaining information regarding Anaqua" and not to "solicit any individual, company, corporation, partnership (that is not currently a Hyperion client) or other potential Hyperion client that Callis knows to be an Anaqua client."  Id.  Although the original 60 day period has now expired, the Defendants represented at oral argument that they had continued to abide by the stipulation.

20, 2012, Defendants removed the action to this Court.  Docket No. 1.

On May 16 and 17, 2012, Anaqua took the depositions of Schroeder and Callis in Houston, Texas.  Joseph Bradley, Anaqua's Chief Financial Officer and corporate representative, attended both depositions.  During the deposition, Defendants' counsel directed Schroeder and Callis not to answer questions regarding the identity of Hyperion's clients and its compensation unless Bradley left the deposition room and Anaqua's counsel agreed not to discuss that testimony with him.  Anaqua did not agree to these conditions, and Schroeder and Callis did not answer the questions.

On May 29, 2012, Defendants sent Anaqua a proposed two-tiered Stipulated Protective Order that included a "Highly Confidential" tier for information that was to be disclosed only to the parties' counsel and experts.  Affidavit of Kelly Stephens, ¶ 9, Exhibits A and B (Docket No. 13-1).  In response to the proffered protective order, Anaqua responded that it would not agree to the highly confidential tier because Hyperion had not identified sensitive information that justified such a designation.  Id. at ¶ 10 and Exhibit C.  Anaqua reports that it offered to stipulate that the information would only be used in the current litigation.  Docket No. 14, p. 2.

On June 12, 2012, Anaqua filed a motion to compel: (1) answers to the questions posed at Schroeder and Callis' depositions that counsel had instructed them not to answer; and (2) Schroeder's appearance at a continued Rule 30(b)(6) deposition because he allegedly was not prepared to discuss certain topics identified in the Rule 30(b)(6) deposition notice.  Docket No.

10. Anaqua also seeks an extension of the portion of the stipulation regarding Hyperion's[4] activities (¶4) pending a ruling on Anaqua's "forthcoming preliminary injunction motion." Id. That same day, Defendants filed a motion for entry of protective order to govern the dissemination of the information requested at the depositions as well as protect Hyperion's trade secrets. Docket No. 12. The Court hear oral argument on September 11, 2012.

II.     Motion To Compel/Motion For Protective Order

At oral argument, both parties agreed that a protective order should be entered regarding each party's confidential information. The parties dispute whether the identity of Hyperion's clients, its pricing, and trade secret information should be protected as highly confidential and therefore only disclosed to the parties' attorneys and experts.

Defendants argue that the identity of Hyperion's clients and pricing information should be protected as highly confidential because: (1) an Anaqua employee (Bradley) has already contacted Hyperion's client Pepsi Co. regarding the allegations in the Amended Complaint "and potentially causing great harm to Hyperion's business with Pepsi Co." Docket No. 15, p. 3; (2) Anaqua's counsel has stated that Anaqua intends to contact another client, Mosaid, and notify them of the allegations, Docket No. 15, p. 3; and (3) some of Hyperion's client's have confidentiality agreements precluding Hyperion from identifying them, Docket No. 15, p. 8; see also Affidavit of Dawn Mertineit at ¶¶ 10-11, Exhibit B (Docket No. 15-1). Defendants also argue that Hyperion needs protection of trade secret information that includes:

> ideas, information, knowledge, intellectual property and discoveries, whether or not patentable, that may reasonably be deemed competitive in nature and that are not

---

[4] At oral argument, Anaqua represented that Callis was no longer employed by Hyperion and therefore that part of the stipulation was now moot.

> generally known in the trade or industry, including but not limited to, product specifications and designs, manufacturing procedures, methods, compositions and technology, business plans, marketing plans, cost and pricing information, development programs, sales methods, customer lists, mailing lists, customer usages and requirements, computer programs, source code, graphic design, and any other information, whether in electronic, oral or written form, and all memoranda, summaries, notes, analyses, compilations, studies or other documents.

Docket No. 13, p. 4.

Anaqua argues that the identity of Hyperion's clients and its pricing information should not be highly confidential because the information is essential to Anaqua's claims and Anaqua, not its counsel, is in the best position to determine whether: (1) Hyperion's customers are in Anaqua's sales pipeline; (2) Callis' work violates her non-competition agreement; and (3) "the scope of Hyperion's disclosure of Anaqua's confidential information and whether such disclosure impacted Anaqua."  Docket No. 14, p. 12.[5]  Anaqua also argues that Hyperion has not identified the trade secret information with the requisite specificity and that a highly confidential designation is not necessary because Hyperion states that the parties are not competitors.  Docket No. 14, p. 2.

Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).  Rule 26(b)(1) generally permits liberal discovery of relevant information.  Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D. Mass. 1990).

Pursuant to Rule 37(a)(3), a party may move to compel an answer to a deposition

---

[5] Anaqua stated at oral argument that it wishes to share the information with Anaqua's chief financial officer, general counsel, chief executive officer, chairman, individuals in its sales department, and individuals who worked with Callis.

question.  Fed. R. Civ. P. 37(a)(3)(B)(i).  However, a court may, "for good cause, issue an order to protect a party or a person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  This includes an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G).   A court has "broad discretion to decide when a protective order is appropriate and what degree of protection is required."  ClearOne Commc'n., Inc. v. Chiang, 276 F.R.D. 402, 404 (D. Mass. 2011) (internal quotation marks and citation omitted).

As the party seeking the protective order, Defendants bear the burden of proving "good cause" by demonstrating a factual basis of potential harm.  Fed. R. Civ. P. 26(c)(1); ClearOne Commc'n., Inc., 276 F.R.D. at 403.  "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."  Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986).

Although "[t]here is no absolute privilege for trade secrets and similar confidential information," Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d 323, 325 (10th Cir. 1981) (citations omitted), a court "must exercise discretion in order to avoid unnecessary disclosure of trade secrets or other confidential business information."  Ares-Serono, Inc. v. Organon Int'l, 151 F.R.D. 215, 219 (D. Mass. 1993).  The risk of competitive injury is particularly high when the opposing party is a business competitor.  Bailey v. Dart Container Corp., 980 F. Supp. 560, 583 (D. Mass. 1996); Ares-Serono, Inc. 151 F.R.D. at 219.  "Thus, the court must generally weigh on the one hand the right of a plaintiff to examine relevant evidence against the right of a defendant to protect its trade secrets and confidential data."  Ares-Serono,

151 F.R.D. at 220.  Courts generally have protected the identity of a company's clients and its pricing information.  See e.g., GTE Products Corp. v. Gee, 112 F.R.D. 169 (D. Mass. 1986); Nutratech, Inc. v. Syntech Intn'l, 242 F.R.D. 552 (C.D. Cal. 2007); Ikon Office Solutions, Inc. v. Konica Minolta Business Solutions, U.S.A., Inc., No. 08-539, 2009 U.S. Dist. Lexis 116372 (W.D.N.C. November 25, 2009).  Courts have also rejected arguments such as those raised by Anaqua about the need to widely share confidential information in order to pursue the case.  See e.g., GTE Products Corp., 112 F.R.D. at 172; Nutratech, Inc., 242 F.R.D. at 556.

      This Court finds that Defendants have shown good cause that Hyperion's customer lists, pricing, and trade secret information should be protected as highly confidential, although Defendants' proposed definition of trade secret information is too broad and must be narrowed in the protective order.  Anaqua has stressed in its Amended Complaint that Hyperion is both a direct and indirect competitor.  See Amended Complaint ¶¶ 58-59.  Indeed, the lawsuit is premised on Hyperion's alleged use of Anaqua's confidential information.  Moreover, Hyperion has provided by affidavit specific examples of harm that has occurred and could occur from the dissemination of confidential information.  However, this court recognizes that Anaqua's counsel may benefit from discussing such information with Anaqua.  Accordingly, Anaqua may disclose information designated as highly confidential only to Anaqua's Chairman, Edgar Mullen.[6]  The Court denies Anaqua's request that the continued depositions take place in Boston, as Anaqua rejected Defendants' reasonable offer for preserving the testimony at the time of the

---

[6] The Court designates Mullen because Anaqua stated at oral argument that its general counsel is new to the company, and Defendants represented that should the Court designate someone to have access to the information beyond Anaqua's outside counsel and experts, they did not object to Mullen viewing the highly confidential information subject to a protective order.

depositions.

III.   Motion To Compel Rule 30(b)(6) Deposition

Anaqua argues that the Court should order Schroeder to reappear for a continued Rule 30(b)(6) deposition because he was not sufficiently prepared to testify regarding the following topics:

- Hyperion's "knowledge, and the source of that knowledge, regarding Anaqua, including, but not limited to, your knowledge regarding Anaqua's pricing, pricing models, product functionality, modules, and/or implementation procedures." (Topic No. 1).
- Hyperion's "recruitment and hiring of Callis, including, but not limited to, communications between you and Callis prior to hiring Callis." (Topic No. 4)
- The scope of Callis' employment with Hyperion GP. (Topic No. 5)
- Hyperion's answers to the Interrogatories. (Topic No. 7)

Docket No. 11, p. 4. Specifically, Anaqua argues that Schroeder was not properly prepared because: (1) he testified that he had never seen the list of deposition topics; (2) his preparation consisted of re-reading Hyperion reports that he wrote and reviewing Anaqua's website; (3) he did not speak to anyone other than counsel to prepare for the deposition; (4) he did not examine the non-disclosure agreement between Anaqua and Hyperion; (5) he did not investigate Callis' work at Hyperion or review company emails to determine how Callis approached Hyperion; and (6) he did not prepare for questions regarding Hyperion's relationship with Thompson IP Management Services, which was identified in an interrogatory. Docket No. 11, p. 11-14. Anaqua only identified unanswered questions pertaining to Callis. Anaqua argues that Schroeder should be ordered to reappear for an additional deposition at Hyperion's expense in Boston. Docket No. 11, p. 16-17.

   A.   Standard Of Review

Rule 30(b)(6) allows organizations to designate individuals to testify on their behalf.

Rule 30(b)(6) "explicitly requires [a company] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition." Heron Interact, Inc. v. Guidelines, Inc., 244 F.R.D. 75, 76-77 (D. Mass. 2007) (citing Calzaturficio S.C.A.R.P.A., s.p.c. v. Fabiano Shoe Co., 201 F.R.D. 33, 36 (D. Mass. 2001)).  Rule 30(b)(6) places the burden upon the deponent to "make a conscientious good-faith endeavor to . . . prepare [it's designee(s)] in order that they can answer fully, completely, unevasively." Briddell v. St. Gobain Abrasives Inc., 233 F.R.D. 57, 60 (D. Mass. 2005) (citation omitted). The burden on the corporate designee "is significant but appropriate given that he/she speaks for (and binds) the corporation."  Berwind Prop. Group, Inc. v. Envtl. Mgmt. Group, Inc., 233 F.R.D. 62, 65 (D. Mass. 2005).

A party has the responsibility to prepare its Rule 30(b)(6) designee "to the extent the matters are reasonably available, whether from documents, past employees, or other sources." Berwind Prop. Group, Inc., 233 F.R.D. at 65 (quoting Calzaturficio, 201 F.R.D. at 37).  This duty of preparation "goes beyond matters personally known to that designee or to matters in which that designee was personally involved."  Briddell, 233 F.R.D. at 60 (citing U.S. v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996)).  "If necessary, the deponent must use documents, past employees, and other resources in performing this required preparation."  Id.  If a Rule 30(b)(6) deponent is not prepared, the court can require the corporation to re-designate its witnesses and mandate their preparation for re-deposition at the corporation's expense.  Calzaturficio, 201 F.R.D. at 41.

The Court will examine each area of inquiry in turn.

B.   Non-Disclosure Agreement

Anaqua argues a non-disclosure agreement between Anaqua and Hyperion is responsive to topics numbers one and seven, which seek information regarding Hyperion's knowledge of Anaqua's pricing and implementation procedures. Docket No. 11, p. 12. Hyperion argues that the non-disclosure agreement in question[7] was not identified in the list of topics, see Docket No. 15, p. 10 n. 7, and that Schroeder provided the information requested during his deposition. Docket No. 15, p. 11.

At his deposition, Schroeder testified that he was not involved in the negotiation of this non-disclosure agreement, that he did not investigate the purpose behind it, and that he is not aware of the information Anaqua provided to Hyperion under it. (Docket No. 11-1, p. 26-27; Depo. 121: 2-122:19). He also testified that Hyperion's knowledge about Anaqua comes from: (1) information published by Anaqua on its website or from other published marketing materials; (2) information that Hyperion requested from Anaqua, to which Anaqua responded voluntarily with no restriction; and (3) Schroeder's networking in the marketplace. Docket No. 15, p. 11 (Depo. at 23:25-24:6; 24:24–25:3; 87:17–89:8; 122:20–124:15; 125:8–25; 127:2-128:11; and 130:6 -131:12).

Because the non-disclosure agreement at issue was not specifically identified in the Rule 30(b)(6) deposition topics and Schroeder has testified regarding the source of Hyperion's knowledge of Anaqua, Anaqua's motion to compel is denied regarding these topics.

---

[7] Defendants stated that there are a number of non-disclosure agreements at issue in this case.

B.   Non-Disclosure Agreement

Anaqua argues a non-disclosure agreement between Anaqua and Hyperion is responsive to topics numbers one and seven, which seek information regarding Hyperion's knowledge of Anaqua's pricing and implementation procedures. Docket No. 11, p. 12. Hyperion argues that the non-disclosure agreement in question[7] was not identified in the list of topics, see Docket No. 15, p. 10 n. 7, and that Schroeder provided the information requested during his deposition. Docket No. 15, p. 11.

At his deposition, Schroeder testified that he was not involved in the negotiation of this non-disclosure agreement, that he did not investigate the purpose behind it, and that he is not aware of the information Anaqua provided to Hyperion under it. (Docket No. 11-1, p. 26-27; Depo. 121: 2-122:19). He also testified that Hyperion's knowledge about Anaqua comes from: (1) information published by Anaqua on its website or from other published marketing materials; (2) information that Hyperion requested from Anaqua, to which Anaqua responded voluntarily with no restriction; and (3) Schroeder's networking in the marketplace. Docket No. 15, p. 11 (Depo. at 23:25-24:6; 24:24–25:3; 87:17–89:8; 122:20–124:15; 125:8–25; 127:2-128:11; and 130:6 -131:12).

Because the non-disclosure agreement at issue was not specifically identified in the Rule 30(b)(6) deposition topics and Schroeder has testified regarding the source of Hyperion's knowledge of Anaqua, Anaqua's motion to compel is denied regarding these topics.

---

[7] Defendants stated that there are a number of non-disclosure agreements at issue in this case.

C.     Callis

Anaqua argues that Schroeder was unprepared because he did not review company email regarding Hyperion's contact with Callis, which Anaqua states is responsive to topic number four.  Anaqua also argues that Schroeder was unprepared because he did not look into the specifics as to what work Callis is doing for Hyperion, which is responsive to topic number 5. Docket No. 11, p. 13.  Although the Court recognizes that Schroeder did testify regarding his contact with Callis, he did not have information regarding Callis' interactions with Eyal Iffergan, Hyperion's President, and did not review company email regarding Callis' contact with Hyperion in preparation for his deposition.  Docket No. 11-2, p. 13-23 (Depo. p. 214-217, 221-228). Schroeder was also not prepared to testify regarding the specific type of implementation work Callis was doing for Hyperion.  Docket No. 15-3, p. 5-6 (Depo. p. 205, 207).  Accordingly, the Court grants Anaqua's motion regarding these topics.  Because the Court finds that Schroeder's inability to testify fully is not "tantamount to a complete failure of the corporation to appear," see Berwind Prop. Group, Inc., 233 F.R.D. at 65, it will not order that Schroeder appear in Boston at Hyperion's expense.

D.     Relationship With Thompson

Anaqua argues that Schroeder was not prepared to testify regarding Hyperion's relationship between Thompson IP Management Services,[8] which Anaqua states is responsive to topic number seven because Anaqua specifically asked about this company in its interrogatories.

Anaqua's interrogatory number four asks whether Hyperion provided product

---

[8] The parties do not differentiate between Thompson IP Management Services and Thompson Reuters.

-11-

functionality guidance and implementation services to Thompson Reuters and the scope of those services. Docket No. 11-5, p. 4. In response to that interrogatory, Hyperion stated that it had not provided any production functionality guidance and/or implementation services to Thompson Reuters. Id. At his deposition, Schroeder testified that Thompson IP Management Services purchased a market briefing from Hyperion in 2011 and that he was not aware of any compensation from Thompson IP Management Services to Hyperion. Docket No. 11-2, p. 26 (Depo. p. 232:8-233:13). In light of Hyperion's response to the interrogatory and Schroeder's testimony, this Court finds that Schroeder adequately responded to questions about this topic. Accordingly, Anaqua's motion to compel is denied regarding this topic.

IV. Conclusion

For the foregoing reasons, the Court finds as follows:

1. Hyperion's motion for protective order and Anaqua's motion to compel Hyperion to answer questions regarding the identity of Hyperion's clients and its pricing is granted in part and denied in part. The parties shall submit a proposed protective order to this Court by September 28, 2012. The Court strongly encourages the parties to work together to submit a stipulated protective order. If the parties cannot agree on a jointly proposed protective order, the parties may separately submit proposed protective orders. The protective order should include: (1) a narrower definition of trade secret information than the one proposed by Defendants; and (2) a highly confidential designation that limits disclosure to the parties' outside counsel, experts, and Anaqua's Chairman, Edgar Mullen. Thereafter, the depositions of Callis and Schroeder shall resume in Texas with

   respect to the unanswered questions.

2. Anaqua's motion to compel additional Rule 30(b)(6) testimony is granted regarding Callis' contact with Hyperion and the implementation work Callis did for Hyperion, but is otherwise denied.  This Court will not require Schroeder to appear in Boston for his continued Rule 30(b)(6) deposition.

3. Paragraph 4 of the stipulation is extended until a ruling on the forthcoming preliminary injunction motion, or until further order of the Court.

           /s/ Jennifer C. Boal
           JENNIFER C. BOAL
           United States Magistrate Judge