UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANAQUA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 12-10710-FDS |
| | ) |
| RALPH SCHROEDER, CARLA JOHNSON | ) |
| CALLIS, HYPERION RESEARCH, AND | ) |
| HYPERION GLOBAL PARTNERS, INC., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**
[Docket No. 66]

February 21, 2014

Boal, M.J.

Defendants Ralph Schroeder ("Schroeder"), Carla Johnson Callis ("Callis"), and Hyperion Global Partners, LLC ("Hyperion")[1] (collectively, "Defendants") have filed a motion for attorneys' fees and costs pursuant to Fed. R. Civ. P. 11 for the filing of the complaint in this case. Docket No. 66. For the following reasons, this Court recommends[2] that the District Court deny Defendants' motion for Rule 11 sanctions.

---

[1] Defendants represent that although Hyperion Research and Hyperion Global Partners, Inc. are named separately in the case caption, Hyperion Research is only a division of Hyperion Global Partners, Inc. Docket No. 15, p. 1 n. 1. For the purposes of this motion, the Court will refer herein to Hyperion Research and Hyperion Global Partners, Inc. collectively as Hyperion.

[2] On May 15, 2013, the District Court referred Defendants' motion to this Court for a report and recommendation. Docket No. 87.

1

I.     FACTUAL BACKGROUND

    A.     The Parties

Anaqua develops and licenses intellectual asset management software ("IP Systems") and implementation services to corporations and law firms.  Docket No. 85 ¶ 2.  Hyperion publishes "MarketView Reports," which evaluate and rate IP Systems, including those of Anaqua and its competitors.  See Docket No. 85 Exs. 6-7.  Hyperion also provides consulting services to assist businesses in selecting software providers.  See Docket No. 79 at 6 n. 2.[3]

Schroeder is a former Anaqua employee who is now employed as Managing Director with Hyperion Research, a unit of Hyperion.  AC ¶¶ 2, 24-25.[4]  As Managing Director, Schroeder was responsible for drafting Hyperion's MarketView Reports.  AC ¶¶ 24-25.  Callis is a former Anaqua employee who, at the time of suit, was about to begin employment with Hyperion.  Id. at ¶ 4.  She no longer works for Hyperion.  Docket No. 58 at 2, 10; Docket No. 79 at 7 n. 3.

    B.     The Non-Competition And Nondisclosure Agreements

The Defendants all signed non-competition and/or nondisclosure agreements with Anaqua.  AC ¶¶ 21, 30, 52.  In November 2006, Schroeder entered into an employment agreement with Anaqua.  AC ¶ 17.  The employment agreement included a "Nondisclosure, Noncompetition and Development Agreement" (the "Schroeder NDA").  Id. at ¶ 21; Docket No. 85, Ex. 2, Ex. A.  Pursuant to the Schroeder NDA, Schroeder agreed not to disclose any of

---

[3] When referring to the parties' pleadings and briefs, the Court cites to the docket page numbers.

[4] "AC" refers to Anaqua's amended complaint.  Docket No. 7 at 31-52.

2

Anaqua's confidential information while employed at Anaqua or after his termination.  AC ¶ 21; Docket No. 85, Ex. 2, Ex. A ¶ 1.

In June 2011, Anaqua and Hyperion entered into a "Mutual Nondisclosure Agreement" (the "Hyperion NDA").  Docket No. 85, Ex. 3.  Pursuant to the Hyperion NDA, each party agreed to furnish the other with confidential information on the condition that the information would be used solely in connection with a potential partnership and would not be disclosed without the other party's consent.  AC ¶¶ 30-32; Docket No. 85, Ex. 3, ¶¶ 1-2.  The Hyperion NDA also contained a section titled "Additional Restrictions on Disclosure and Contacts," which provided:

> Each party acknowledges that direct contact with any employees . . . (other than contacts in the ordinary course of business) could seriously impair our respective businesses, and each party agrees to refrain from any and all such contact unless first obtaining approval from the other party.

Docket No. 85, Ex. 3, ¶ 7.

In September 2010, Callis executed a "Proprietary Information, Non-Competition and Inventions Agreement" (the "Callis Non-Competition Agreement"), which prohibited her from disclosing or using any of Anaqua's proprietary information except as necessary for her employment with Anaqua.  AC ¶ 52; Docket No. 85, Ex. 5, ¶¶ 1, 2.  Callis also agreed not to accept employment at any of Anaqua's clients or competitors.  AC ¶¶ 53-54; Docket No. 85, Ex. 5 ¶ 9.

    C.    <u>Hyperion's MarketView Reports And Consulting Services</u>

In April and September of 2011, respectively, Hyperion published "MarketView Report: Enterprise Trademark Management Systems for Corporations" and "MarketView Report: IPM Systems for Corporations" (collectively, the "MarketView Reports").  Docket No. 85, Exs. 6 & 7.  Anaqua alleged that the MarketView Reports included confidential and false information

about Anaqua. AC ¶¶ 26-27, 35-38. Anaqua further alleged that Schroeder, while providing consulting services to its clients, disseminated confidential and/or false information about Anaqua. Id. at ¶¶ 40-42.

> D. Callis' Move To Hyperion

Anaqua alleged that Hyperion, without Anaqua's prior approval, solicited Callis and offered her employment in February 2012. AC ¶¶ 45-46. Defendants maintain that Callis initially reached out to Hyperion, not vice versa, to discuss general employment opportunities. Docket No. 79 at 5. Callis eventually accepted an offer of employment from Hyperion. See AC ¶ 47; see also Docket No. 2 ¶ 47.

Anaqua alleged that Hyperion breached the "non-solicitation" provision in the Hyperion NDA by contacting and offering employment to Callis. AC ¶¶ 44-46. Anaqua further alleged that Defendants breached, and tortiously interfered with, the Callis Non-Competition Agreement when Callis accepted employment at Hyperion, Anaqua's competitor. AC ¶¶ 49-65. Anaqua considers Hyperion a competitor because both companies allegedly offer software implementation services and because Hyperion claimed on its website to be in partnership with Thomson IP Management Services ("Thomson"), one of Anaqua's prime competitors. Id. at ¶¶ 57-59; Docket No. 86 at 8; Docket No. 85, Ex. 1. Anaqua also alleged that Callis breached her Non-Competition Agreement because she acquired confidential information and trade secrets from Anaqua that she would be required to use and/or disclose while working with Hyperion. AC ¶¶ 62, 119. Hyperion states that it is not a competitor because it is a consulting company, not a software company. Docket No. 79 at 6 n. 2.

II. PROCEDURAL BACKGROUND

On March 1, 2012, Anaqua filed its amended complaint in Massachusetts Superior

4

Court against the Defendants for breach of contract (Counts I, II, V and VII), libel/false statements/defamation (Count III), tortious interference with prospective contractual relations (Count IV), tortious interference with contractual relations (Count VI), and unfair business practices in violation of M.G.L. ch. 93A (Count VIII).  See AC at ¶¶ 66-125.

On April 20, 2012, Anaqua and Defendants entered into a Stipulation and Order, which provided for expedited discovery and enjoined Hyperion from taking actions resembling those alleged in the amended complaint.  See Docket No. 7 at 99-102.  That same day, the Defendants removed the action to this Court on the basis of diversity jurisdiction.  Docket No. 1.

After some discovery, on June 22, 2012, Defendants sent a six-page single space letter (the "Rule 11 Letter") to Anaqua that outlined their argument that the complaint lacked any legal or factual merit.  See Docket No. 79, Ex. A.  The Rule 11 Letter requested that Anaqua withdraw the complaint under Rule 11's safe harbor provisions.  Id. at 6.  Anaqua responded by stating that it had "a good faith basis to assert the claims against Hyperion, Schroeder and Callis."  Docket No. 79, Ex. B at 5.  It did not withdraw the complaint.

On September 10, 2012, after the expiration of Rule 11's safe harbor provision, Defendants filed a motion for partial summary judgment on the claims related to the MarketView Reports and the disclosure of confidential and false information.  Docket No. 29.  In response, Anaqua moved under Fed. R. Civ. P. 56(d) to complete noticed discovery and for an extension of time to respond to Defendants' motion.  Docket No. 37.

On January 16, 2013, after some further discovery, Anaqua filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 41(a)(2).  Docket No. 58.  Anaqua also filed a motion to stay discovery pending a decision on its motion to dismiss.  Docket No. 59.  On

January 16, 2013, Defendants opposed Anaqua's motion to stay discovery and cross-moved to compel the production of outstanding discovery.  Docket No. 61.

The District Court granted Anaqua's motion to dismiss on January 25, 2013 and terminated the case.  Docket Nos. 62, 63.  The Court retained jurisdiction over the case for the purpose of considering any potential motion for sanctions or costs.  Docket No. 62.

On February 15, 2013, Defendants moved for leave to file a motion for attorneys' fees without an accompanying memorandum of law.  Docket No. 64.  Defendants explained that they wished to file a motion to take discovery related to the issues underlying their motion for fees and costs.  Defendants therefore requested that the Court permit them to file a supporting memorandum after the close of any post-dismissal discovery.  The Court granted their motion on February 25, 2013.  Docket No. 65.

On March 1, 2013, Defendants filed the present motion seeking attorneys' fees and costs.  Docket No. 66.  As originally filed, Defendants moved pursuant to M.G.L. ch. 231, § 6F; 28 U.S.C. § 1927; and Mass. R. Civ. P. 11(a), as well as Fed. R. Civ. P. 11.  That same day, Defendants filed a motion to conduct discovery related to their motion for fees and costs.  Docket No. 67.  In response, Anaqua submitted a "bench brief" on March 12, 2013, in which it argued that Defendants' Rule 11 Letter was procedurally insufficient and barred as matter of law.  Docket No. 69.  Defendants responded to Anaqua's bench brief on March 25, 2013.  Docket No. 71.

On April 5, 2013, the District Court entered an order denying Defendants' motion for fees and costs with respect to the claims pursuant to M.G.L. ch. 231, § 6F, 28 U.S.C. § 1927, and Mass. R. Civ. P. 11(a).  Docket No. 72.  The District Court, however, found the Rule 11 Letter to be procedurally sufficient and permitted the Rule 11 allegations to go forward.  Id. at 4.  The

District Court also granted Defendants' motion for discovery subject to further review at a later conference.  Id. at 5.

On April 10, 2013, Anaqua filed an opposition to Defendants' motion for discovery. Anaqua also filed a motion for reconsideration of the Court's April 5, 2013 Order or for the certification of an interlocutory appeal regarding the propriety of a post-dismissal motion for sanctions.  Docket No. 74.  On April 11, 2013, the District Court denied Anaqua's motion. Docket No. 76.  The District Court also denied Defendants' motion for discovery "without prejudice to its renewal upon a showing of unusual and extraordinary circumstances that require such relief."  Id.

On April 29, 2013, Defendants filed a memorandum in support of their Rule 11 motion. Docket No. 79.  Anaqua filed an opposition on May 13, 2013.  Docket No. 86.  On May 20, 2013, Defendants filed a reply brief.  Docket No. 90.  This Court heard oral argument on October 31, 2013, and permitted the parties to file supplemental materials thereafter.  On November 15, 2013, Anaqua filed two supplemental affidavits.  Docket No. 118.  On December 6, 2013, Defendants filed a response to Anaqua's supplemental filings.  Docket No. 120.

III.   STANDARD OF REVIEW

"Rule 11 permits a court to impose sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." CQ Int'l Co., Inc. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 60 (1st Cir. 2011).  Rule 11 "is not a strict liability provision, and a showing of at least culpable carelessness is required before a violation of the Rule can be found."  Id. (quoting Citibank Global Mkts., Inc. v. Santana, 573 F.3d 17, 32 (1st Cir. 2009)).  "The mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions."  Id. (quoting Protective Life Ins. Co.

7

v. Dignity Viatical Settlement Partners, L.P., 171 F.3d 52, 58 (1st Cir. 1999)); see also Kusek v. Kusek, 461 B.R. 691, 698 (1st Cir. BAP 2011) ("Every misinformed legal argument does not entitle its opponent to requital.").[5]  "Rule 11 is a 'potent weapon,' and so "a judge should resort to [sanctions] only when reasonably necessary-and then with due circumspection." Gauthier v. United States of America, 4:10-40116-FDS, 2011 WL 3902770, at *12 (D. Mass. Sept. 2, 2011) (citing Navarro-Ayala v. Nunez, 968 F.2d 1421, 1426 (1st Cir. 1992) and United States v. Figueroa –Arenas, 292 F.3d 276, 279 (1st Cir. 2002)).  In deciding whether a party violated Rule 11(b), a court "must use an objective standard of reasonableness under the circumstances." Id. (quoting Hochen v. Bobst Group, Inc., 198 F.R.D. 11, 16 (D. Mass. 2000)).

A party need not carry an investigation "to the point of absolute certainty." CQ Int'l Co., Inc., 659 F.3d at 63 (quotation omitted).  "Rather, it is sufficient if a factual contention 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" Id. (citing Fed. R. Civ. P. 11(b)(3)).  "At its core, the imposition of sanctions is a judgment call." Nyer v. Winterthur Int'l, 290 F.3d 456, 462 (1st Cir. 2002) (citations omitted).  Even if a court finds a violation of Rule 11, it possesses the discretion not to sanction the violating party. See Hochen, 198 F.R.D. at 16.  Rule 11 is "intended to facilitate case management, not to increase caseload by requiring a district court to analyze the reasonableness of legal and factual contentions that it would otherwise not have to ascertain." CQ Int'l Co., Inc., 659 F.3d at 62.  The First Circuit has stated that "[it] will not invite full-scale satellite litigation in the area of sanctions, nor will [it] require district courts to spend valuable judicial resources in punctiliously analyzing the reasonableness of each and every legal and factual contention made

---

[5] Although the Bankruptcy Appellate Panel's decision was based upon Rule 9011 of the Federal Rules of Bankruptcy Proceeding, Rule 9011 is derived from Fed. R. Civ. P. 11 and the First Circuit has explained that "Rule 11 jurisprudence is largely transferable to Rule 9011 cases." In re D.C. Sullivan Co., Inc., 843 F.2d 596, 598 (1st Cir. 1988).

by a party where . . . such analysis is not necessary to resolve the merits of the central claim in dispute." Id. "Rule 11 sanctions should be reserved for only most egregious of lawyerly missteps." McGee v. Town of Rockland, 11-cv-10523-RGS, 2012 WL 6644781, at *1 n. 2 (D. Mass. Dec. 20, 2012).

IV.     ANALYSIS

Defendants argue that Anaqua failed to conduct a reasonable inquiry into the factual and legal bases underlying its claims and, therefore, filed and pursued frivolous claims. Docket No. 79 at 2. Specifically, Defendants maintain that Anaqua has not presented any evidence or legal support indicating that: (1) Callis' move to Hyperion constituted breach of, or interference with, the subject agreements; or (2) Defendants disclosed confidential or false information in the MarketView Reports or during consulting sessions.

Anaqua responds that Defendants' Rule 11 motion is untimely and based on conduct after the safe harbor notice and, therefore, is barred as a matter of law. Docket No. 86 at 23-24. In the alternative, Anaqua contends that there was an "ample basis" for each of its claims. Id. at 14-22.

A.     Timeliness Of Rule 11 Motion[6]

Relying on Rule 11(c)(2), Anaqua contends that it is "immunized" from Defendants' Rule 11 motion because it was not filed in a timely manner and because it voluntarily dismissed the case. Docket No. 86 at 23-24.

Rule 11's so-called "safe harbor" provision provides as follows:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must

---

[6] Anaqua raised similar arguments in its "bench brief" and in its motion for reconsideration or for an interlocutory appeal. Docket No. 69 at 1-3; Docket No. 75 at 2-3. Nevertheless, the District Court ruled that Defendants would be permitted to persist with a Rule 11 motion and denied Anaqua's motion for reconsideration without prejudice. Docket Nos. 72, 76. Accordingly, these arguments are addressed herein.

9

> be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets…

Fed. R. Civ. P. 11(c)(2).  This provision affords parties the opportunity to correct or withdraw ill-advised pleadings before sanctions are imposed.  Galanis v. Szulik, 841 F. Supp. 2d 456, 462 (D. Mass. 2011).

Here, Defendants served the Rule 11 Letter on June 22, 2012, and the District Court has already found that it satisfied the core purposes of the safe harbor provision.  Docket No. 72 at 4.  Anaqua did not move to withdraw its complaint until January 16, 2013, approximately six months, and a good deal of litigation, after the Rule 11 Letter.  Docket No. 58.

Nevertheless, Anaqua maintains that it is immunized from sanctions because it eventually dismissed its complaint voluntarily.  In support, Anaqua cites to two cases: Hockley v. Shan Enters. Ltd. P'ship, 19 F. Supp. 2d 235 (D.N.J. 1998) and Photocircuits Corp. v. Marathon Agents, Inc., 162 F.R.D. 449 (E.D.N.Y. 1995).  Anaqua relies on these cases for the proposition that a Rule 11 movant may not wait until after the voluntary dismissal of the case because the offending pleading has already been withdrawn and/or the parties against whom sanctions were sought had not received a safe harbor period.  These cases, however, are not persuasive in light of the District Court's ruling that the Rule 11 Letter satisfied the safe harbor principles.  Not only did Anaqua fail to withdraw the complaint within the safe harbor timeframe, it persisted in litigating this case for six months after receiving the Rule 11 Letter.  Those cases are, therefore, distinguishable and the safe harbor provisions do not immunize Anaqua under the present circumstances.

Anaqua also argues that Defendants' motion is untimely because it was not filed promptly after Defendants determined the basis for their motion.  Docket No. 86 at 24.  This

argument is similarly unpersuasive. Rule 11 says nothing about the timing of motions for sanctions. Monahan Corp. N.V. v. Whitty, 319 F. Supp. 2d 227, 232 (D. Mass. 2004). The advisory committee's notes indicate that motions should be filed "promptly" after determining the basis for the motion. Fed. R. Civ. P. 11 advisory committee's notes (1983). However, the advisory notes also explain that "in the case of pleadings the sanctions issue under Rule 11 normally would be determined at the end of the litigation." Id.; see also Kaplan v. Zenner, 956 F.2d 149, 152 (7th Cir. 1992) (concluding that "the situation contemplated by the committee notes is one in which the basis for factual allegations in pleadings cannot be determined until such time as the party claiming those facts has had an adequate opportunity to develop his proof") (internal quotation marks omitted). In Monahan Corp., the case on which Anaqua relies, the court found that a Rule 11 motion was untimely where the movant failed to comply with the safe harbor provision, made no mention of potential sanctions during the pendency of the litigation, and moved for sanctions only after the grant of summary judgment and a final order of judgment. Monahan Corp., 319 F. Supp. 2d at 234-35.

Here, however, Defendants complied with Rule 11's safe harbor provision and filed their motion within a reasonable time period under the circumstances. Therefore, this Court finds that Defendants' motion is timely.

      B.      The Claims Based On Callis' Move To Hyperion

As a result of Callis' acceptance of an employment offer with Hyperion, Anaqua alleged that Hyperion breached the non-solicitation component in the Hyperion NDA (Count V), tortiously interfered with the Callis Non-Competition Agreement (Count VI), and that Callis breached the Callis Non-Competition Agreement (Count VII). AC ¶¶ 100-20. Defendants argue

that Anaqua failed to conduct a reasonable inquiry into the facts and law underlying these allegations.[7]

Defendants present evidence and non-frivolous legal arguments in support of their positions.[8] Defendants contend that any reasonable inquiry would have revealed that the Hyperion NDA contained no "non-solicitation" provision and that Callis reached out to Hyperion regarding general employment opportunities. See Docket No. 79 at 5-6, 14. The contractual provision underpinning Anaqua's non-solicitation claim appears to be the "Additional Restrictions on Disclosure and Contacts" provision in Hyperion's NDA. Docket No. 85, Ex. 3 ¶ 7. Pursuant to this provision, Anaqua and Hyperion agreed, except in the ordinary course of business, that they would refrain from any direct contact with each other's employees unless first

---

[7] Defendants argue that Anaqua failed to conduct a reasonable inquiry as to the basis for its claim of damages. Docket No. 79 at 17. Prior to filing the complaint, Anaqua, however, was not required to conduct an inquiry into actual damages resulting from claims for breach of contract, libel, or chapter 93A. See Thompson v. Main St. Auto Sales & Serv., Inc., No. 9588, 1999 WL 1034759, at *3, *5 (Mass. App. Ct. 1999) (damages are not an element of a claim for breach of contract under MA law and nominal statutory damages may be awarded for violation of chapter 93A); Medinol Ltd. v. Boston Scientific Corp., 346 F. Supp. 2d 575, 599 (S.D.N.Y. 2004) (damages are not an element of a breach of contract claim under New York law); Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003) (statements constituting libel are actionable without proof of economic loss). However, even for those claims for which damages is a necessary element, under Rule 11(b)(3) it was not unreasonable for Anaqua to engage in discovery for this purpose.

[8] The First Circuit has not delineated clearly who bears the burden of proof to establish the factual predicate for the imposition of Rule 11 sanctions. See Augustyniak Ins. Group, Inc. v. Astonish Results, L.P., Nos. 11-464S, 11-564S, 2013 WL 998770, at *7 (D.R.I. Mar. 13, 2013). Some courts have held that once a litigant moves on a non-frivolous basis for the Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim. Diego, Inc. v. Audible, Inc., 505 F.3d 1362, 1368 (Fed. Cir. 2007). Other courts have held that the ultimate burden of proof is on the Rule 11 movant, and "[a]ll doubts regarding whether Rule 11 has been violated should be resolved in favor of the signer of the paper." Augustyniak Ins. Group, Inc., 2013 WL 998770 at *7 (citing McMahon Sec. Co. v. FB Foods, Inc., No. 8:04-1791, 2006 WL 2092643, at *2 (M.D. Fla. July 27, 2006)). This Court adopts the Federal Circuit's approach.

obtaining approval from the other party.  See id.  Defendants argue that this provision was meant to address concerns regarding confidentiality, not the solicitation of employees, and that it was Callis who reached out to Hyperion in the first instance.  Docket No. 90 at 5 & n. 4.   Defendants also maintain that "the interviewing of and hiring of potential employees would also be within the purview of the 'ordinary course of business' exception to the contract."  Docket No. 79 at 6.

Defendants further contend that Anaqua did not have a reasonable basis for considering Hyperion to be a "competitor" and, therefore, had no basis for its breach of contract claim against Callis.  See Docket No. 79 at 15.  Specifically, Defendants represent that the services provided by the two companies do not intersect and that Anaqua had previously pursued a business partnership with Hyperion.  Id. & Ex. A at 4.

In response, Anaqua argues that the "non-solicitation" provision expressly precludes the signatories from contacting each other's employees directly.  Docket No. 86 at 17.  Anaqua has presented evidence showing that Hyperion contacted Callis directly without Anaqua's approval.  Docket No. 85, Ex. 13 at 5-6.  As Anaqua correctly notes, the text of the provision is not limited to circumstances where Hyperion initiates contact.  Docket No. 86 at 17.  Anaqua further argues that the "ordinary course of business" language is ambiguous and it was unclear, at a minimum, whether the communications at issue fit that exception.  Id.

With respect to the claims regarding the Callis Non-Competition Agreement, in terms of whether Hyperion was Anaqua's competitor, Anaqua has presented evidence showing that Hyperion represented itself as a partner of Thomson and that Hyperion and Anaqua provided IP System integrations.  Docket No. 85 Exs. 1, 9; Docket No. 86 at 18.  Further, the language of the Callis Non-Competition Agreement is vague regarding what constitutes a "competitor" and, therefore, it was not unreasonable for Anaqua to allege that Defendants breached, and tortiously

interfered with, the Callis' Non-Competition Agreement when Callis accepted employment with Hyperion.

Accordingly, this Court finds that Counts V, VI, and VII, as alleged in the complaint, do not support Rule 11 sanctions.

### C. The Claims Based On The MarketView Reports And Schroder's Consultations

Counts I-IV and VIII of Anaqua's complaint are based on the content of Hyperion's MarketView Reports and Schroeder's consultation sessions with Anaqua clients. See AC ¶¶ 69-70, 78-79, 82-83, 95-96, 122-123; Docket No. 28, Ex. 3 at 5; Docket No. 86 at 22. In short, Anaqua alleges that Defendants disseminated confidential and false information about Anaqua in the MarketView Reports or during such consultations.

These claims present a closer call. Defendants argue that Anaqua failed to conduct a reasonable inquiry into the facts underlying these claims. Defendants specifically contend that all of the information in the MarketView Reports was publicly available on Anaqua's website, was provided to Hyperion by Anaqua specifically for publication in the Reports, or was reviewed and approved in advance of publication by Anaqua. Docket No. 79 at 7-8, 14-15. Defendants further contend that they did not disclose any factual information about Anaqua, confidential or otherwise, that was not already in the MarketView Reports. Docket No. 29 at 12 n. 3.

In support, Defendants have presented charts comparing the text of the MarketView Reports to the text of the source documents. Docket 27, Exs. 4 & 7.[9] These charts indicate that Hyperion gathered much of the information about Anaqua from publicly available sources, and often did so verbatim. Defendants have also submitted annotated copies of the MarketView Reports, in which they indicate that the factual information was gathered from Anaqua's website,

---

[9] The Defendants submitted these documents in support of their motion for partial summary judgment.

its press releases, and from "briefing session" meetings between Anaqua and Hyperion representatives. Docket No. 27, Exs. 5 & 8. Based on this record, this Court finds that Defendants have shown a non-frivolous basis for their Rule 11 motion.

Anaqua, in turn, has been slow to come forward with the basis for its claims. When Defendants initially pressed Anaqua on its failure to produce such evidence, Anaqua simply responded that it had reviewed the Reports, "and the disclosures in those reports support this claim." Docket No. 79, Ex. B. at 2.[10] When pressed further, during the exchange of interrogatories, Anaqua identified pages 19-30 of the April 2011 MarketView Report and pages 22-34 of the September 2011 MarketView Report as containing confidential and false information. Docket No. 79, Ex. D. Anaqua, however, did not identify any particular statement that was confidential or false.

In its supplemental filings, Anaqua identifies for the first time several categories of information that it considers confidential supported by an affidavit from Joseph Bradley, Anaqua's Chief Financial Officer at the time of the filing of the complaint, and Ian Reid, Anaqua's Senior Vice-President of Marketing. Docket No. 118, Exs. A, B. Mr. Bradley states that he reviewed the Amended Complaint, approved its filing, and believed all factual statements were true at the time of filing. Docket No. 118, Ex. A at ¶ 2.

---

[10] Anaqua argues that its post-filing actions are legally irrelevant. See Docket No. 86 at 24. Rule 11 concerns what the attorney knew at the time he or she filed the subject pleading. Knapp Schenck & Co. Ins. Agency, Inc. v. Lancer Mgm't Co., Inc., No. Civ. A. 02-12118-DPW, 2004 WL 57086, at *10 (D. Mass. Jan. 13, 2004) (declining to consider voluntary dismissal as evidence, by itself, that pleading violated Rule 11). However, a litigant's Rule 11 obligations do not terminate once an ill-founded pleading is filed, particularly where the litigant continues to endorse and advocate that pleading. See Balerna v. Gilberti, 281 F.R.D. 63, 66 (D. Mass. 2012) In any event, this Court focuses its analysis on what Anaqua knew at the time it filed its complaint. This Court cites to post-complaint occurrences to the extent that they are probative of what Anaqua likely knew or did not know at the time of suit.

Anaqua maintains that it considers confidential all information pertaining to licenses, subscriptions, pricing, costs, security models and technology, product road maps, corporate strategies and positioning, and staffing. Docket No. 118, Ex. A ¶¶ 33, 35, 37, 39. Anaqua identifies specific statements in the MarketView Reports that, in its view, disclose or are derived from such confidential information. See id. Anaqua further argues that it had an ample basis for its defamation claim. See, e.g., Docket No. 86 at 19. Defendants vigorously contest these statements. See Docket No. 96 at 8-9; Docket No. 120 at 3-10.

In analyzing Anaqua's claims, the Court believes that Defendants have the better arguments in terms of the evidence to support Anaqua's claims. Rule 11, however, requires more. The Court is mindful that it should avoid using the wisdom of hindsight and instead evaluate the accused conduct based upon what was reasonable at the time Anaqua filed its complaint. See Cruz v. Savage, 896 F. 2d 626, 631 (1st Cir. 1990). After careful consideration of the Defendants' arguments, this Court finds that the conduct here is simply not the egregious type for which Rule 11 was designed.[11] While with deeper reflection on Anaqua's part this case might not have been brought at all, this Court does not find that the case was utterly frivolous and declines to recommend the imposition of Rule 11 sanctions.

Accordingly, this Court recommends that the District Court deny Defendants' motion for Rule 11 sanctions with respect to Counts I, II, III, IV, and VIII.

## V.   RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Court deny Defendants' motion for Rule 11 sanctions.

---

[11] In addition, the instant motion appears to have devolved into exactly the type of satellite litigation against which the First Circuit has warned. CQ Int'l Co., Inc., 659 F.3d at 62. For example, the parties have filed over 500 pages on the Rule 11 issues alone.

VI.     REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

                                                /s/ Jennifer C. Boal
                                                JENNIFER C. BOAL
                                                United States Magistrate Judge